MATTER OF A——D——L——

## In DEPORTATION Proceedings

## A-8961899

*Decided by Board May 26, 1959*
*Decided by Board March 10, 1960*

Citizenship—Acquisition through naturalized Hawaiian citizen—Burden of proof—Prior administrative holdings recognizing parent's citizenship not overcome by inability to find Hawaiian law conferring Hawaiian nationality on minor children of naturalized Hawaiian citizens.

(1) A person born in China in 1889 of a father who had been naturalized as a citizen of Hawaii in 1892

    (a) Did not acquire Hawaiian nationality under the doctrine of *jus sanguinis* and, accordingly, did not thereby become a citizen of the United States under the terms of the Act of April 30, 1900.

    (b) Did not acquire United States citizenship under R.S. 1933 as he was born prior to his father's acquisition of United States citizenship on April 30, 1900.

    (c) Did not acquire United States citizenship after birth by derivation through his father under R.S. 2172 and section 5 of the Act of March 2, 1907, since he did not commence residence in the United States until 1915 when he was 26 years of age and his earlier stay in Hawaii from 1892 to 1898 was prior to the time that his father became a United States citizen.

Hence, this person's son (the respondent in these proceedings) born in China in 1919 cannot be found under any of the above concepts to have acquired or derived United States citizenship through his father.

(2) However, when administrative rulings through the years on many occasions have recognized the respondent's father as a United States citizen and the respondent himself has been issued a United States passport and admitted as a United States citizen, the Government has the burden of overcoming a *prima facie* case of citizenship. This burden is not met by the mere inability of the Service, unsupported by legal or authoritative sources, to find any law or decree in force in the Kingdom of Hawaii conferring Hawaiian citizenship on minor children of naturalized citizens who took up residence in Hawaii during their minority.

CHARGE:

    Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Immigrant without visa.

**BEFORE THE BOARD**
(May 26, 1959)

**Discussion:** The case comes forward on appeal from the order of the special inquiry officer dated October 30, 1958, finding the respond-

ent to be an alien, subject to deportation on the charge contained in the order to show cause and granting him the privilege of voluntary departure in lieu of deportation.

The issue in the case is whether the respondent is an alien or a citizen. The facts are not in dispute and have been stipulated. The status of respondent is dependent on that of his father, for if the father was not a citizen, neither is the respondent. The respondent was born December 4, 1919, in Chungshan, China. His father is L——S——L——, who was born March 7, 1889, in Han How Hee, China. The father is the son of L——C——, who was born in China in 1864, came to Hawaii in 1888, and was naturalized as a citizen of Hawaii on July 15, 1892. The grandfather, L——C——, left Hawaii in 1898 for China where he resided until about August 15, 1910; he was readmitted into Hawaii as a citizen of the United States on September 15, 1910, and remained there until his death on June 25, 1912.

The respondent's father, L——S——L, came to Hawaii when he was about three years old (1892) and remained there until he was about nine years old (1898), when he returned to China; he returned at Honolulu, T.H., ex SS. *Nippon Maru* on October 19, 1915, and was admitted as a United States citizen as the foreign-born child of L——C—— who had resided in Hawaii during L——S——L——'s minority. He was issued Certificate of Identity No. 18097 on December 21, 1915, showing his admission as the "son of L——C——, solely because of his status as a naturalized citizen of Hawaii holding Certificate of Identity No. 720." Thereafter the citizenship status of the respondent's father was conceded on various occasions, to wit, the issuance of a passport on June 12, 1919; admission as a United States citizen on November 4, 1919; and issuance of United States Passport No. 1012 on September 15, 1921, by the Governor's Office, Honolulu, T.H.

The respondent was issued United States Passport No. 183 (FS 6779) on January 12, 1953, by the American Consulate General at Hong Kong and was admitted as a citizen at Honolulu ex SS. *President Cleveland* on January 26, 1953, and has since remained in this country. However, an application for a certificate of citizenship under section 341 of the Immigration and Nationality Act filed by respondent on February 1, 1956, was denied on October 10, 1956, and such denial was affirmed on appeal to the Southwest Regional Office of the Immigration and Naturalization Service on November 27, 1956.

The United States citizenship of the respondent's grandfather, L——C——, is conceded. He was naturalized as a citizen of Hawaii on July 15, 1892, and became a United States citizen under section 4 of the Act of April 30, 1900 (31 Stat. 141; 48 U.S.C. 494) which provided: "That all persons who were citizens of the Republic of

Hawaii on August twelfth, eighteen hundred and ninety-eight, are hereby declared to be citizens of the United States and citizens of the Territory of Hawaii."

It is the citizenship status of the respondent's father, L——S—— L——, which is crucial insofar as the respondent is concerned. The father was born in China on March 7, 1889. This date was prior to the acquisition of United States citizenship by the grandfather under the Act of April 30, 1900. The father, therefore, did not acquire United States citizenship at birth under section 1993 of the United States Revised Statutes.[1] The respondent's father did not come to the United States to reside until October 19, 1915, when he was 26 years of age. He did not acquire United States citizenship after birth by derivation through his father under section 2172 of United States Revised Statutes nor under section 5 of the Act of March 2, 1907 since he did not take up residence in the United States during his minority. The father's residence in the United States from about 1892 to 1898 would not have conferred citizenship upon him since it occurred prior to the time that the grandfather became a citizen of the United States and there is no evidence he retained residence in the United States during his absence from 1898 until his return to Hawaii in 1915.

The argument as to acquisition of citizenship by the respondent rests on the theory that the father acquired citizenship in Hawaii on July 15, 1892, when the grandfather, L—— C , was naturalized as a citizen of Hawaii, such Hawaiian citizenship being acquired by the father by derivation through the grandfather; further, that the father became a citizen of the United States under the Act of April 30, 1900, on that date by virtue of the fact that he was a citizen of Hawaii. This argument contemplates that the father acquired Hawaiian citizenship at birth through the grandfather and that he thereafter became a United States citizen under the Act of April 30, 1900. It must be rejected because such meager authority as is available on this point is to the contrary.[2] Under the authori-

---

[1] Sec. 1993. All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose fathers were or may be at the time of their birth citizens thereof are declared to be citizens of the United States; but the rights of citizenship shall not descend to children whose fathers never resided in the United States.

[2] Hackworth, *Digest of International Law*, vol. III (3d ed.), pp. 119 to 123; *Wong Foong* v. *United States*, 69 F.2d 681 (C.C.A. 9, 1934). In *Cummings* v. *Isenberg*, 89 F.2d 489, the Court of Appeals was reluctant to accept a case reported in a newspaper in 1868 which contained correspondence in which the Minister of the Interior of the Hawaiian Islands is reported to have stated that no one acquires citizenship in the Kingdom of Hawaii unless he was born there or born abroad of Hawaiian parents either native or naturalized during their temporary absence from the Kingdom; the court then proceeded to decide the case, which was a suit under section 9 of the Trading with the Enemy Act as amended, on another point.

ties, it appears that a person born in China of a father who had been naturalized as a citizen of Hawaii prior to April 30, 1900, did not acquire Hawaiian nationality under the doctrine of *jure sanguinis*.

However, there remains for consideration another point, namely, whether the respondent's father, through whom the respondent's claim of citizenship rests, acquired United States citizenship subsequent to birth. It is to be remembered that the citizenship status of respondent's father was conceded on various occasions, as evidenced by the issuance of a passport on June 12, 1919; admission as a United States citizen on November 4, 1919; and issuance of United States Passport No. 1012 on September 15, 1921, by the Governor's Office, Honolulu, T.H. Similarly, the respondent himself was issued United States Passport No. 183 (FS 6779) on January 12, 1953, by the American Consulate General at Hong Kong and was admitted as a citizen at the port of Honolulu on January 26, 1953.

The respondent's application for a certificate of citizenship was denied in 1956. The denial of the certificate of citizenship, as appears from a memorandum dated March 22, 1956, goes back to a letter dated June 4, 1917, addressed by the Assistant Commissioner General of Immigration to the State Department, in which it was stated that the Immigration Bureau had been unable to find that there was any law or decree in force in the Kingdom of Hawaii which granted citizenship to the minor children of naturalized aliens upon their taking up residence in Hawaii; the conclusion was stated therein that the applicant did not become a citizen of the Kingdom of Hawaii and had not acquired United States citizenship by the annexation of the Islands. That memorandum of March 22, 1956, also notes that despite this communication to the State Department, the respondent's father was thereafter on June 12, 1919, issued a United States passport by the Consulate General of the United States at Hong Kong. The memorandum concluded that the issue was entirely unsettled and that in the absence of any opinion on the matter the proper course would be to recommend denial of the certificate on the ground that the father did not acquire Hawaiian citizenship and could not have acquired United States citizenship on April 30, 1900.

Apparently the original determination as to the citizenship of respondent's father was made in connection with the father's application for admission at the port of Honolulu ex SS. *Nippon Maru* when a written decision was made by an immigrant inspector on October 19, 1915, which was approved by the Inspector in Charge. The decision considered the specific question of derivation of Hawaiian citizenship subsequent to birth. Unable to find any Hawaiian law on the subject, the conclusion was reached that the naturalization of the grandfather about July 1892 as a citizen of Hawaii and

the father's residence in Hawaii during his minority from 1892 to 1898 made him a citizen of the United States under the same rule that children of naturalized citizens became citizens of the United States in like manner; and that notwithstanding the fact that Chinese were not eligible to be naturalized as citizens of the United States, they were eligible to be so naturalized under the laws of Hawaii. The memorandum notes that the act referred to was not passed until 1907, but knowing of no other rule by which to go, and taking the general principle that the naturalization of a father naturalized his wife and children, it was recommended that the applicant be admitted as the foreign-born child of a naturalized citizen who was born previous to the naturalization of his father and became a citizen of Hawaii by coming to and residing in the Hawaiian Islands during minority, and subsequently became a citizen of the United States upon the annexation of Hawaii.

The burden of proof in establishing alienage in deportation proceedings is upon the Government.[3] Inasmuch as the respondent had been admitted to the United States on January 26, 1953, as a United States citizen in possession of a United States passport, the special inquiry officer finds that the respondent has made a *prima facie* case of citizenship and that the burden is upon the Service to establish by clear, convincing, and unequivocal evidence that the respondent is not a citizen of the United States and was not such a citizen at the time of his entry. The special inquiry officer is adopting that rule of burden of proof which is most onerous to the Government.[4]

We find it unnecessary to take a stand on the degree of proof required to overcome a *prima facie* or preexisting finding of citizenship, for, even if the rule less rigorous to the Government be applied, the proceedings in the instant case must be terminated. At the very least, the burden is upon the Service to establish alienage in a deportation proceeding by a preponderance of reasonable, substantial, and probative evidence. The facts are not in dispute and there is no indication of fraud. There is no case for acquisition of citizenship at birth inasmuch as the authorities appear to hold that prior to the Act of April 30, 1900 Hawaiian citizenship was not transmitted to alien-born children under the doctrine of *jure sanguinis*.

However, the case against derivation of citizenship subsequent to birth is predicated upon an old 1917 communication addressed by the Assistant Commissioner General to the State Department in which the Service stated it had been unable to find there is any law

---

[3] *United States ex rel. Bilokumsky* v. *Tod*, 263 U.S. 149.

[4] *Lee Hon Lung* v. *Dulles*, 261 F.2d 719 (C.A. 9, 1958) ; *Delmore* v. *Brownell*, 236 F.2d 598 (C.A. 3, 1956). A less rigorous rule from the Government's standpoint has been applied by some courts. See cases cited in *Lee Hon Lung* v. *Dulles, supra*, footnote 8; also *Reyes* v. *Neelly*, 264 F.2d 673 (C.A. 5, 1959), but note strong dissent of Judge Rives.

or decree in force under the Kingdom of Hawaii which grants citizenship to minor children of naturalized aliens by taking up their residence in Hawaii and that, therefore, the applicant did not become a citizen of the Kingdom of Hawaii and did not acquire United States citizenship by the annexation of the Islands. Despite this communication, the State Department issued the respondent's father a passport in 1919.

No legal authority is cited to overcome the prior administrative holdings as evidenced by the issuance of passports and by the admission to the United States as a citizen of the respondent and his father, other than a reiteration of the negative declaration by the Immigration Bureau in 1917 as to lack of success in finding any law or decree on the subject. The extent or thoroughness of the search for such law is not indicated. No legal source is quoted to establish this position. There is no indication that an attempt was made to seek an opinion from a valid authoritative source, such as the Governor or the Attorney General for Hawaii who might search the law or the Hawaiian Archives in order to hand down a ruling which would be sufficient to overcome the prior administrative finding of citizenship.

The record reflects that the citizenship of the respondent's father, through whom the respondent claims citizenship, was conceded on many occasions in the past and that the father, as well as the respondent, had been issued United States passports with which they were duly admitted into the United States. Such a *prima facie* case of citizenship is not overcome by a mere statement that the Service has been unable to find any cases on the particular point involved. The holding by the special inquiry officer, which is correct in itself, to the effect that a child born of Hawaiian parents does not acquire Hawaiian nationality *jure sanguinis*, is, however, irrelevant to the point of derivation of citizenship subsequent to birth by taking up residence in Hawaii during minority. It is, therefore, concluded that the respondent has *prima facie* shown that he is a citizen of the United States and that the Service has failed to establish alienage by a preponderance of reasonable, substantial, and probative evidence, and has failed to overcome the case for citizenship presented by respondent. Accordingly, the proceedings must be terminated.

**Order:** It is ordered that the proceedings be and the same are hereby terminated.

## BEFORE THE BOARD
### (March 10, 1960)

**Discussion:** The case comes forward upon motion of the District Director, Honolulu District, dated October 7, 1959, requesting that the deportation proceedings be reopened in accordance with 8 CFR 3.2.

We last considered this case on May 26, 1959, and the facts are fully set forth in that decision. Briefly, the record relates to a native of China, born December 4, 1919, who last entered the United States at the port of Honolulu on January 12, 1953, in possession of a United States passport. The father of respondent, L——S——L——, was born March 7, 1889, in China, the son of L——C——, whose citizenship status is not contested. The citizenship status of the father was conceded on a number of prior occasions, as was the citizenship status of this respondent, until the denial of an application for a certificate of citizenship under section 341 of the Immigration and Nationality Act on October 10, 1956. In our prior order we fully reviewed the case and held that the respondent had made a *prima facie* showing that he is a citizen of the United States which the Service has not overcome by a preponderance of reasonable, substantial and probative evidence, thus failing to sustain its burden of establishing alienage in the deportation proceedings.

In support of the instant motion there have been submitted copies of pages from the bound volume of Hawaiian Civil Code published in 1884 dealing with article VIII, "Naturalization of Foreigners," furnished by the Hawaiian Department of Archives; copies of an Act of November 25, 1887 amending the naturalization law, sections 428, 429, 431 and 433; articles 17, 18 and 19 of the Hawaiian Constitution of July 3, 1894; and a decision in the cases of K——K—— and K——H——. We have examined these exhibits as well as certain supplemental information contained in a publication entitled "Naturalization in Hawaii" by Maude Jones, Archivist, Public Archives of Hawaii.

Neither the statutory material nor the Hawaiian Constitution contains any reference to acquisition of citizenship by foreign-born children of citizens of Hawaii. The cases of K——K—— and K——H—— support the premise that Hawaiian citizenship could not be acquired at birth by nonresident alien children. The cases are not deemed to be dispositive of the issue present herein inasmuch as the applicants for admission in those cases were 27 and 22 years of age, respectively, at the time of first coming to the United States and, therefore, no derivation of citizenship during minority was possible. The supplement to the motion refers to a case which holds that no one acquires citizenship in the Hawaiian Kingdom unless he is born abroad of Hawaiian parents, either native or naturalized, during their temporary absence from the Kingdom, a holding contrary to that enunciated in the K—— cases. The second reference in the supplemental material merely refers to a denial of an application because of the fact that there was no law in the Kingdom of Hawaii at that time (1903) to cover a case which involved a Chinese child born shortly before his father was naturalized and who came to Hawaii at the age of 13.

353

In our decision of May 26, 1959, we referred to the numerous prior administrative findings that the petitioner's father had acquired United States citizenship as well as the fact that as late as 1953 the respondent himself was granted a United States passport. We concluded that the respondent had established a *prima facie* case of United States citizenship and that the Service had failed to establish alienage by a preponderance of reasonable, substantial and probative evidence. We do not believe that the allegedly new "evidence" submitted should make any change in our prior decision.

In addition, we note that the burden of proof on the Service to overcome a prior adjudication of citizenship in the District of Hawaii is a stronger one than we enunciated previously and inasmuch as this case arises in the same district, the burden upon the Service is to establish by clear, convincing and unequivocal evidence that respondent is not a citizen of the United States and was not such a citizen at the time of his entry. In the case of *Lee Hon Lung* v. *Dulles*, 171 F. Supp. 830 (1959), the United States Court for the District of Hawaii was hearing a case which the Court of Appeals for the Ninth Circuit had remanded after setting forth the standard of proof referred to above.[1] The Court held that in view of the appellate court's ruling that the trier of fact may only set aside a finding of a board of special inquiry for fraud or error by evidence which is clear, unequivocal and convincing, that the 1924 decision of the board of special inquiry admitting plaintiff as an American citizen, although not *res judicata*, was determinative of the issues in the case.

In view of the standards set forth by the appellate and District Courts in the same jurisdiction in which the present case is being heard, we have no other course but to come to the conclusion that the prior determinations of citizenship, while not *res judicata*, are determinative of the citizenship issues in this case in the absence of a showing of error by evidence which is clear, unequivocal and convincing. That burden has not been met by the Service in the instant deportation proceeding.

**Order:** It is ordered that the motion be and the same is hereby denied.

---

[1] *Lee Hon Lung* v. *Dulles*, 261 F. 2d 719, 724.